IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**SHERIEL F. PERKINS; and**                                                            **PLAINTIFFS**
**THE STATE OF MISSISSIPPI**
**EX REL. SHERIEL F. PERKINS**

**V.**                                                         **NO. 4:13-CV-00131-DMB-JMV**

**CAROLYN MCADAMS**                                                 **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This is an election contest brought by Plaintiff Sheriel F. Perkins and the State of Mississippi on relation of Sheriel F. Perkins against Defendant Carolyn McAdams, the current Mayor of Greenwood, Mississippi.[1] In her complaint, Plaintiff challenges the results of the June 4, 2013, Greenwood, Mississippi, mayoral election. Doc. #3.

## I
## Procedural History

### A. Original Complaint

On June 24, 2013, Plaintiff filed suit in the Circuit Court of Leflore County, Mississippi. In her original complaint, Plaintiff alleged that she "was one of two candidates for Mayor of the City of Greenwood, Mississippi, in the General Election held on June 4, 2013." Doc. #3 at ¶ 4. Plaintiff further alleged that the final certification of results, which showed a victory for her opponent Defendant Carolyn McAdams, were "erroneous, arbitrary, capricious, [and] incorrect." *Id.* at ¶ 9.

---
[1] Although not specified in the complaint, insofar as the complaint challenges acts of the City of Greenwood and seeks to overturn the results of an election, the Court assumes that this action is brought against Defendant in her official capacity as Mayor. *See Forside v. Miss. State Univ.*, No. 1:01-cv-438, 2002 WL 31992181, at *5 n.5 (N.D. Miss. Dec. 30, 2002) (noting that "[w]hile some circuits require rigid pleading requirements to specify individual or official capacity in section 1983 suits, ... the Fifth Circuit looks to the substance of the claim, the relief sought, and the course of proceedings.").

Of relevance here, Plaintiff alleged that various election officials engaged in "racially motivated manipulation of the electoral process to the detriment of the African American voters in Greenwood …." Doc. #3 at ¶¶ 20, 22, 25. Specifically, Plaintiff alleged that the election officials gave African American voters "incorrect information concerning affidavit (provisional ballots)" and denied such voters the opportunity to cast provisional ballots. *Id.* at ¶ 25.

Based on her initial allegations, Plaintiff alleged federal causes of action arising from violations of: (1) "Section 2 of the Voting Rights Act of 1965" (Counts Six and Eight), (2) "Help America Vote Act, 42 U.S.C. [§] 15482" (Count Seven); and (3) substantive and procedural due process rights guaranteed by the Fourteenth Amendment to the United States Constitution (Count Eleven). Doc. #3 at ¶¶ 20–25, 30–31.

### B. Removal, Motion to Remand, and Amendment

On July 24, 2013, Defendant removed the action to this Court. Doc. #1. In her notice of removal, Defendant, citing Counts Six, Seven, and Eight, stated that "this Court has federal question jurisdiction of certain claims asserted by Plaintiff against Defendant and supplemental jurisdiction over all other claims because they are related to claims in the action within such original jurisdiction …." *Id.* at ¶¶ 8–9.

On August 22, 2013, Plaintiff filed a motion to amend her complaint. Doc. #10. In her motion, Plaintiff sought leave to "file a first amended complaint to delete the Sixth, Seventh, and Eleventh causes of action based on federal law and references to Section 2 of the Voting Rights Act of 1965, the Help America Vote Act, 42 U.S.C. Section 15[4]82 and the substantive and procedural due process clauses of the Fourteenth Amendment." *Id.* The brief accompanying the motion described the motion as seeking "leave to file a first amended complaint to voluntarily delete and dismiss any and all federal claims and references to federal claims." Doc. #11 at 3.

The day after filing the motion to amend, Plaintiff filed a motion to remand for lack of subject matter jurisdiction. Doc. #12. On September 9, 2013, Defendant filed a timely response in opposition to the motion to remand. Doc. #19. Plaintiff did not file a reply to Defendant's response within the time allowed.[2] However, on September 25, 2013, Plaintiff filed a motion for leave to file out of time a reply in support of her motion to remand. Doc. #23. The same day, Plaintiff filed an "amended" motion for leave to file the reply. Doc. #24. In her amended motion, Plaintiff represents that the motion for leave is unopposed. *Id.*

On January 2, 2014, the Magistrate Judge assigned to this matter granted Plaintiff leave to file an amended complaint. Doc. #26. The amended complaint, which was filed the following day, omitted all references to federal statutes and the United States Constitution. Doc. #28.

On January 17, 2014, Defendant filed an amended motion to dismiss combined with a motion to strike in the same document. Doc. #31. Plaintiff timely responded to the dual motion. Doc. #34. On February 5, 2014, the Court directed Defendant to file her motions separately. Accordingly, on February 10, 2014, Defendant filed a second amended motion to dismiss and a separate motion to strike. Docs. #35 & #37. The same day, Defendant replied to Plaintiff's response to the January 17 motion. Doc. #39.

## II
## Motion for Leave to Reply

In her amended unopposed motion for leave to file an out of time reply in support of the motion to remand, Plaintiff asserts that the failure to file the reply within the time allowed is attributable to a calendaring oversight by her attorney. Doc. #24. Upon consideration, the Court

---

[2] Plaintiff's reply was due on September 19, 2013. *See* L. U. Civ. R. 7(b)(4) ("Counsel for movant desiring to file a rebuttal may do so within seven days after the service of the respondent's response and memorandum brief."); Fed. R. Civ. P. 6(d) ("When a party may or must act within a specified time after service and service is made under Rule 5(b)(2)(C), (D), (E), or (F), 3 days are added after the period would otherwise expire under Rule 6(a)").

3

will grant Plaintiff's amended unopposed motion for leave [24]. The reply brief submitted out of time [25] will be deemed timely filed. The original motion for leave [23] will be denied as moot.

## III
## Motion to Remand

### A. Applicable Standard

"The right of removal is entirely a creature of statute and a suit commenced in a state court must remain there until cause is shown for its transfer under some act of Congress. These statutory procedures for removal are to be strictly construed. It is to be presumed that a cause lies outside this limited federal jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Hood ex rel. Mississippi v. JP Morgan Chase & Co.*, 737 F.3d 78, 84 (5th Cir. 2013) (internal citations, punctuation, and quotation marks omitted). When considering a motion for remand, "[a]ny ambiguities are construed against removal and in favor of remand to state court." *Id.* "To determine whether jurisdiction is present for removal, [federal courts] consider the claims in the state court petition as they existed at the time of removal." *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (internal citation omitted).

### B. Analysis

With few exceptions, none of which are relevant here, subject matter jurisdiction in federal court is conferred through either: (1) federal question jurisdiction, pursuant to 28 U.S.C. § 1331; or (2) diversity jurisdiction, pursuant to 28 U.S.C. § 1332. Here, there is no dispute that the parties are not diverse so as to implicate diversity jurisdiction. Accordingly, the sole question is whether Plaintiff's original state court complaint invoked federal question jurisdiction.

28 U.S.C. § 1331 provides district courts with "original jurisdiction of all actions arising under the Constitution, laws, or treaties of the United States." "To determine whether a case is one 'arising under' federal law for these purposes, [courts] ordinarily apply the well-pleaded complaint rule." *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 328 (5th Cir. 2008) (internal citations omitted). The well-pleaded complaint rule, in turn, provides that:

> [W]hether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute, ... must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.

*Id*. (alterations in original) (quoting *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 10 (1983)).

Here, there is no dispute that Plaintiff's original complaint asserted two claims through federal statutes (the Voting Rights Act and Help America Vote Act) and one claim under the Fourteenth Amendment to the United States Constitution. Nevertheless, Plaintiff argues that federal question jurisdiction is absent because: (1) her federal claims are "frivolous or insubstantial;" (2) Defendant's notice of removal did not "cite[], mention[] or address[]" "the requirements of the *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) decision;" (3) the federal court should abstain from exercising jurisdiction pursuant to *Younger v. Harris*, 401 U.S. 37 (1971); and (4) the notice of removal does not argue that the VRA or HAVA completely preempt state law.[3] Doc. #11.

"In federal question cases[], where the complaint is so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court, but for two possible exceptions[,] must entertain the suit. The two exceptions are where the federal question clearly

---

[3] Without elaboration or citation, Plaintiff also argued, "[t]here are procedural defects in defendant's Notice of Removal." Doc. #11 at 4.

appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Southpark Square Ltd. v. City of Jackson*, 565 F.2d 338, 341 (5th Cir. 1977) (internal punctuation, quotation marks, and citations omitted). Here, Plaintiff takes the position that her HAVA and VRA claims are wholly insubstantial or frivolous because the statutes do "not apply to garden variety election irregularities," and do not "create … private right[]s of action in the context of a state law election contest." Doc. #13 at 5, 9 (citing *Broyles v. State of Texas*, 618 F.Supp.2d 661, 692–98 (S.D. Tex. 2009)).

As an initial matter, contrary to Plaintiff's contention, "[o]rganizations and private parties have been permitted to enforce Section 2 of the VRA …." *Veasey v. Perry*, __ F. Supp. 2d __, No. 13-cv-00193, 2014 WL 3002413, at *8 (S.D. Tex. July 2, 2014) (collecting cases). Furthermore, the language from *Broyles* on which Plaintiff relies held that "circuit courts faced with claims that election irregularities violated due process and equal protection rights have uniformly declined to endorse action under § 1983 with respect to garden variety election irregularities." *Broyles*, 618 F. Supp. 2d at 694 (emphasis added). In so holding, the *Broyles* court explicitly distinguished "garden variety irregularities," such as human error in counting votes, from "purposeful or systematic discrimination against voters of a certain class." *Id.* Put differently, not only does the language cited by Plaintiff apply to a different statute, it also does not apply to allegations that, as here, a defendant engaged in purposeful or systematic discrimination against voters of a certain class.

Turning to applicable case law, "[s]ection 2 of the VRA forbids state and local voting procedures that 'result[] in a denial or abridgement of the right of any citizen of the United States to vote on account of race[.]'" *Fairley v. Hattiesburg*, 584 F.3d 660, 667 (5th Cir. 2009) (alterations in original) (quoting 42 U.S.C. § 1973(a)). In this regard, "[a section] 2 violation is

6

shown if, based on the totality of circumstances, members of a racial group have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." *Id.* (internal quotation marks omitted). Section 2 "covers episodic practices, as well as structural barriers, that result in discrimination in voting." *Welch v. MckEnzie*, 765 F.2d 1311, 1315 (5th Cir. 1985); *see also U.S. v. Brown*, 494 F. Supp. 2d 440, 448–89 (S.D. Miss. 2007) (collecting authorities). Additionally, the provision applies to state elections. *See Chisom v. Roemer*, 501 U.S. 380, 404 (1991) (section 2 applies to state judicial elections).

Here, Plaintiff brought a claim under section 2 of the VRA in which she challenged episodic election practices which allegedly deprived African American voters of the ability to participate in the election process. This claim is neither frivolous nor insubstantial, as those terms are used in federal question jurisprudence. Accordingly, Plaintiff's original complaint raised a federal question and this Court must entertain the suit.[4] *Southpark Square Ltd.*, 565 F.2d at 341. Thus, the motion to remand must be denied.[5]

---

[4] Given this conclusion, the Court declines to address the frivolity or substantiality of Plaintiff's remaining federal claims. *See Bd. of Comm'rs of the S.E. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co., LLC*, __ F.Supp.2d __, No. 13-5410, 2014 WL 2943602, at *26 (E.D. La. June 27, 2014) ("A single claim over which federal-question jurisdiction exists is sufficient to allow removal.").

[5] The Court rejects Plaintiff's arguments regarding *Younger*, *Grable*, and preemption. *Younger* abstention, which instructs "deference to ongoing state proceedings" is inapplicable for the simple reason that there are no ongoing state proceedings. *See Wightman v. Tex. Supreme Court*, 84 F.3d 188, 189 (5th Cir. 1996). Furthermore, *Grable* and preemption are doctrines which <u>create</u> federal jurisdiction from state law claims. *See Buis v. Wells Fargo Bank, N.A.*, 401 F. Supp. 2d 612, 615 (N.D. Tex. 2005) ("*Grable* makes unequivocally clear that the existence of a cause of action created by federal law is not a prerequisite to establish federal question jurisdiction."); *see also Hart v. Bayer Corp.*, 199 F.3d 239, 244 (5th Cir. 2000) ("if a federal law is found to 'completely preempt' a field of state law, the state-law claims in the plaintiff's complaint will be 'recharacterized' as stating a federal cause of action"). The doctrines do not destroy federal question jurisdiction in cases where a federal claim has been explicitly pled.

# IV
# Supplemental Jurisdiction

Having denied the motion to remand on the basis of Plaintiff's original complaint, the Court turns to the substance of the amended complaint and the propriety of retaining jurisdiction over this matter.

As explained above, Plaintiff sought "leave to file a first amended complaint to voluntarily delete and dismiss any and all federal claims and references to federal claims." Doc. #11 at 3. Plaintiff received the requested leave and subsequently filed an amended complaint.

Once all federal claims have been eliminated from an action, "the court must exercise its discretion whether to exercise supplemental jurisdiction" pursuant to 28 U.S.C. § 1367(c)(3). *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999). Thus, in assessing continued jurisdiction, the Court will: (1) consider whether the federal claims have been eliminated from this action; and (2) if the federal claims have been eliminated, whether exercise of supplemental jurisdiction is warranted.

### A. The Existence of Federal Claims

After filing her amended complaint, Plaintiff filed a document in this court "disclaim[ing] and disavow[ing] any intent to plead a federal claim." Doc. #34 at 3.

The amended complaint contains six causes of action styled as: (1) "First Cause of Action: Wrongful, Arbitrary And Capricious Rejection of Legal Affidavit and Absentee Ballots; (2) "Second Cause of Action: Illegal Machine Votes Cast By Non-Residents Of Greenwood, Mississippi; (3) "Third Cause of Action: Illegal Absentee Ballot Votes Cast And Counted;" (4) "Fourth Cause of Action: The Invalidity of Absentee Ballot Votes That Lack The Signature Of Either The Voter Or Attesting Across The Flap Of The Absentee Ballot Envelope Under Miss. Code Ann. § 23-15-633 (Rev. 2001), Lack of Signature Of Voter Or Witness On Application;"

(5) "Fifth Cause of Action: Denial Of Statutory Assistance to Voters Under Miss. Code Ann. § 23-15-549 (Supp. 1987);" (6) "Sixth Cause of Action: No Statutory Lock And Seals on Certain Ballot Boxes;" (7) "Seven[th] Cause Of Action: Voter And Absentee Ballot Fraud Under Miss. Code Ann. Section 23-15-753 (Rev. 1999);" and (8) "Eighth Cause Of Action: Mere Error Or Omission By City Clerk To Place Absentee Ballots In The Proper Precinct Box."

Notwithstanding her assertions that the amended complaint omitted all federal claims, in her "Fourth Cause of Action," which alleges a violation of vote counting requirements under Mississippi's race-neutral absentee ballot provision, Plaintiff repeats her allegation from the original complaint that the majority of disqualified provisional ballots were cast by African Americans. Doc. #28 at ¶ 20.

Furthermore, under the heading "General Cause of Action," Plaintiff alleges that:

> Representatives and agents of defendant were allowed to video record and take photos of African American voters coming to certain predominant African American polling places, thus intimidating them and placing a chilling effect upon their right to exercise the franchise and a violation of their constitutional rights and voting rights.

Doc. #28 at ¶ 38. Under the same "General Cause of Action" heading, Plaintiff alleges that the City violated numerous state election laws. *Id.* at ¶¶ 31–39.

Neither the allegations regarding the provisional ballots nor the invocation of voting rights explicitly reference United States law. Furthermore, in numerous filings before this Court, Plaintiff has expressly disavowed reliance on federal law in her amended complaint. Under these circumstances, the Court concludes that Plaintiff's amended complaint does not state a federal question.[6] *See Gamblin v. Miss. Farm Bureau Mut. Ins. Co.*, No. 3:07-cv-698, 2010 WL

---

[6] Even if the allegations could be deemed references to federal law the amended complaint still would not raise a federal question. References to federal constitutional and statutory provisions do not necessarily raise federal question jurisdiction, particularly where such references are not "tie[d] … to a specific cause of action against any of the named defendants." *Tortora v. City of Shelton Bd. of Fire Comm'rs*, No. 3:12-cv-951, 2012 WL 4854694, at *2

1780221, at *1 (S.D. Miss. Apr. 30, 2010) ("On the basis of plaintiff's disavowal of any federal claims, this court remanded the action …."); [7] *see generally Dougherty v. Cerra*, 987 F.Supp.2d 721, 730 (S.D. W.V. 2013) (in considering propriety of removal, "federal courts should rely on 'other paper' to ascertain federal question jurisdiction only when necessary to clarify an ambiguity in the plaintiff's pleading") (citing *Eggert v. Britton*, 223 Fed. App'x 394, 397–98 (5th Cir. 2007)).

### B. Supplemental Jurisdiction

Having found that the amended complaint does not raise a federal question, the Court must decide whether to exercise its discretion and invoke supplemental jurisdiction over this action. "It is well-settled that a district court may remand to state court a removed case involving pendent state-law claims if all claims arising under federal law are withdrawn. The Fifth Circuit has stated that its general rule is to decline to exercise jurisdiction over pendent state-law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial …." *McGhiey v. Metro News Serv., Inc.*, No. 12-cv-00578, 2013 WL 3338598, at *6 (W.D. Tex. July 1, 2013) (quoting *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999)) (internal citations and quotation marks omitted).

Under 28 U.S.C. § 1367(c): "The district courts may decline to exercise supplemental jurisdiction [if] (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction,

---

(D. Conn. Oct. 11, 2012) (collecting cases). Here, the reference to "franchise," constitutional, and voting rights is not alleged under a specific cause of action. Furthermore, the reference to African American provisional ballots is alleged within the context of a claim based on a violation of determining the validity of signatures on absentee ballots.

[7] Plaintiff is cautioned that in *Gamblin*, where a case was remanded due to a disavowal of the existence of federal claims, the court found that the disavowal operated to judicially estop the subsequent assertion of federal causes of action. 2010 WL 1780221, at *7.

or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." Courts in the Fifth Circuit treat these four categories as "statutory factors" to consider when evaluating supplemental jurisdiction. *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 159 (5th Cir. 2011). Additionally, the Fifth Circuit requires consideration of "common law factors [of] judicial economy, convenience, fairness, and comity." *Id.*

Here, insofar as Plaintiff's complaint involves specific application of state election law procedures, the first statutory factor weighs in favor of remand. The second statutory law factor also weighs in favor of remand because the state law claims predominate over the non-existent federal law claims. The third statutory factor weighs against remand insofar as none of the federal claims have been dismissed, only disavowed. Finally, as explained below, the fourth factor, which incorporates the common law factors, weighs in favor of remand. *See Enochs*, 641 F.3d at 159 ("The fourth [statutory] factor also favors remand, as the heavy balance of the common law factors in favor of remand constitutes another compelling reason to decline jurisdiction.").

Turning to the common law factors, the judicial economy factor weighs in favor of remand because "at the time the federal claims were deleted hardly any federal judicial resources, let alone a significant amount of resources, had been devoted to the … consideration of the … state law claims (or to any claims)." *Id.* Likewise, remand to the Circuit Court of Leflore County, which maintains a courthouse in Greenwood, would prove convenient given the locus of the relevant events. *Id.* at 160 ("[I]t is certainly more convenient for the case to have been heard in the Texas state court in Lampasas County, where all of the parties, witnesses, and evidence were located."). The third common law factor also weighs in favor of remand because "it [is] certainly fair to have … the purely … state law claims heard in … state court …." *Id.*

11

Finally, insofar as federal courts are "not as well equipped for determinations of state law as are state courts," the fourth common law factor of comity is served by remand. *Id.*

In sum, the statutory and common law factors weigh against the exercise of supplemental jurisdiction. Accordingly, this Court will decline jurisdiction and will remand this matter to state court.[8]

## V
## Conclusion

For the reasons above, the Court: (1) **DENIES** Plaintiff's motion to remand [12]; and (2) **GRANTS** Plaintiff's second motion to file out of time her reply brief in support of her motion to remand [24]. The Court concludes that Plaintiff's amended complaint does not raise a federal question, that exercise of supplemental jurisdiction is unwarranted, and that, therefore, this matter must be **REMANDED**. Accordingly, the Court will **DENY as moot**: (1) Defendant's motion to dismiss [8]; (2) Plaintiff's first motion for leave to file her reply brief in support of her motion to remand [23]; (3) Defendant's motion for extension of time to file an amended motion to dismiss [29]; (4) Defendant's first amended motion to dismiss [31]; (5) Defendant's second amended motion to dismiss [35]; and (6) Defendant's motion to strike [37].

SO ORDERED, this the 29th day of September, 2014.

/s/ Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[8] Having declined supplemental jurisdiction, the Court will deny all outstanding motions as moot.